Baldwin, J.
The merits of this cause turn upon the question whether the interest of mrs. Hickerson in the personal estate of her husband Joseph Hickerson deceased (with the credit to which she is entitled for her property sold under execution) is sufficient, and properly applicable, to extinguish the debt contracted by her for purchases at the sale made by Marshall Hickerson his executor. This involves an enquiry into the principles upon which the accounts have been settled by the master commissioner, under the order of the circuit court. The basis of the settlement is a report made by the same master commissioner, in another suit of Shumate &c. v. Hickerson &c. then depending in the same court, of several accounts directed by interlocutory decrees in that suit; to wit, an account of the administration of Marshall Hickerson upon the estate of Joseph Hickerson deceased; another, of the administration de bonis non of Hosea Hickerson upon the estate of *648 Joseph Hickerson deceased; and a third, of the admin¡gtraI¡on Qf Hosea Hickerson upon the estate of Marshall Hickerson deceased. The result of that report is a balance against Marshall Hickerson as executor of Joseph Hickerson; a balance in favour of Hosea Hickerson as administrator de bonis non of Joseph Hickerson; and a balance against him as administrator of Marshall Hickerson. It was upon the basis of the accounts thus reported, that the master commissioner proceeded in the present cause to ascertain the aforesaid interest of mrs. Hickerson, who was a party in the case of Shumate Sfc. v. Hickerson &fc. but not in the present suit. Mrs. Hickerson being entitled absolutely to a distributive share of one third in the residue of her husband’s personal estate exclusive of the slaves, after payment of his debts, and to one third of the slaves as her dower for life only, the commissioner restated the accounts, so as to shew in the first place a balance against Marshall Hickerson executor of Joseph Hickerson, exclusive of the slaves, of 254 dollars 93 cents, after deducting the balance due to Hosea Hickerson as administrator de bonis non of Joseph Hickerson; the one third of which balance, to wit, 84 dollars 98 cents, he reported in favour of mrs. Hickerson. He then went on to ascertain what she was further entitled to, on account of her interest in the slaves. None of these were forthcoming. It appears from the appraisement that there were seven. Two of them were sold under execution: two were specifically bequeathed by the testator, and the presumption is were delivered over to the legatees : two others were sold by the executor Marshall Hickerson, but when, or for what prices, does not appear: the record furnishes no information of the disposition made of the seventh, and the probability is that he was old and of little or no value. The widow, for whom no provision was made by the will, claimed that made for her by law. Her dower in the slaves being one third for life, and she *649 having been deprived thereof by the conduct of the executor, compensation could be made to her therefor in but one of two modes; to wit, by allowing her the annual interest during her life on one third of the %'alue of the slaves, or by allowing one third of the annual estimated hires. The commissioner made statements in both ways, debiting the widow with the judgment against her for purchases at the sale, and crediting her, in the first, with one third annually of the interest on the value of the slaves, and in the second, with one third annually of the estimated hires; and in both, with her distributive share of the other personal estate, and with the actual value of the slave King (acquired from her father’s estate and sold under the first execution upon said judgment) minus the sheriff’s commission upon the sale. The result of the first statement was a balance against the widow, of 261 dollars 88 cents with interest from the 1st of January 1839; and of the second a balance in her favour, of 163 dollars 15 cents with interest on 158 dollars 13 cents thereof from the same dale. This last statement was adopted by the circuit court, and the decree rendered against the defendant Hosea Hiclcerson individually; doubtless because there were ample assets in his hands as administrator of Marshall Hickerson's estate, for payment of the amount thus ascertained to be due to the widow and chargeable against that estate, after the extinguishment of the judgment by the application of her credits.
If this adjustment of the accounts between Elizabeth Hiclcerson and the estate of her deceased husband be correct, it relieves us from the necessity of considering the questions so elaborately discussed at the bar, arising out of the allegation of the defendant that the conveyance to the plaintiff Helm, by Elizabeth Hiclcerson, of her interest in her father’s estate, was voluntary and fraudulent as regards, her creditors; inasmuch as.it *650 will thus appear that the defendant has no right in a court °f equity to occupy that relation towards her.. And this brings us to the consideration of the objections to that adjustment urged on the part of the apPeIiant*
In the first place, it is contended that the whole adjustment is wrong, on the ground that a court of equity ought not to interpose by way of injunction, to ascertain and set off a distributive interest in an estate, against a debt contracted by the distributee for purchases from the executor of property belonging to the estate. This is certainly correct as a general proposition, and is well established by the authorities cited for the appellant. Such a practice would occasion much confusion and injustice, by obstructing and perplexing the executor in the administration of the assets, exposing him to the danger of devastavits, and subjecting creditors of the estate to injurious delays. The rule however is not free from exception, and the reasons upon which it is founded are inapplicable to the case before us. All the difficulties which have occurred in the administration and distribution of this estate are attributable to the misconduct of Marshall Hickerson the executor, and the defendant Hosea Hickerson, his administrator and successor. There has been the most unreasonable delay in the settlement of the administration accounts. No step towards it was taken during the six years which elapsed from the time of the executor’s qualification in 1815 until his death in 1S21. In August 1821, the defendant Hosea Hickerson qualified as administrator of Marshall Hickerson, and as administrator de bonis non with the will annexed of Joseph Hickerson; but instead of settling up the administration accounts of himself and his predecessor in a reasonable lime, he failed to do so for a period of nearly twelve years prior to the institution of this suit in July 1333. Nor could he be brought to such settle *651 ment, in the suit instituted against him for that purpose in 1827, by Shumate and other distributees of Joseph Hickerson, until coerced by attachments for his contempt in disobeying orders of the court in that suit, •Thus a period of eighteen years prior to the institution of this suit was suffered by the personal representatives of the estate in question to elapse without a settlement of their administration accounts. This delay, connected with the representation made by Marshall Hickerson at the lime of the executorial sale, that there was no danger in becoming the widow’s surety for the amount of the purchases made by her, inasmuch as it would fall far short of her distributive interest in the estate, was well calculated to lull her into security, and inspire the belief that payment of her bond would not be exacted, unless shewn to be necessary by a settlement of the administration accounts. And if the judgment recovered against her in 1827 had a tendency to remove this impression, it could not have suggested the necessity of a suit on her part for the recovery of her distributive share ; inasmuch as the suit of Shumate &c. v. Hickerson &c. brought by the other •distributees in 1827, to which she was a party, would have accomplished that object, but for the continued default of the defendant Hosea Hickerson; whose conduct was extremely unjust and oppressive in suing out execution against her, in 1S33, upon the judgment, while in contempt of the orders of court requiring a settlement of the administration accounts. I think, under the circumstances, it was entirely proper that he should be restrained by injunction from proceeding upon the execution, until he should shew, by a full and fair settlement of the estate, that the purposes of justice required it: that if he could have been subjected at that late period to any inconvenience or hazard, it was far from arising out of the due discharge of his duties: and that any creditors who had so long postponed the *652 prosecution of their demands against the estate would more probably be benefited than injured by the aid of the court in sifting the accounts of the delinquent fiduCI9X16S»
l^e next P^ace> 11 13 urgec^ that the compensation to the widow for her dower right in the slaves ought to have been the interest on the value, instead of estimated hires. I am at a loss to perceive any principle upon which that pretension can be sustained. The widow was entitled to her dower interest in kind ; an important privilege, of which she could not be lawfully deprived, unless by a sale of the slaves rendered necessary for payment of the debts by the inadequacy of the other personal assets. In regard to the slaves specifically bequeathed, and supposed to have been surrendered to the legatees, there is not a shadow of apology for disregarding the dower interest of the widow. As to those sold by the executor, it has not been shewn when, or for what amount, or under what circumstances they were sold; and on the other hand it is apparent from the master commissioner’s report, that there was no deficiency of the other personal assets, a balance having been reported against him on that account. The only colour for a sale of slaves is as respects those sold under execution in April 1816, when it may be supposed that the fund arising from the executorial sale of the perishable property belonging to the estate w.as not available, the bonds therefor not falling due until November following. It certainly would be unreasonable to charge an executor with the injurious consequences arising from a forced sale of slaves under execution, before it was in his power to obtain from the assets the means of payment: but that is not the question here. The slaves were purchased in by the executor himself; and, under the circumstances, he ought to be treated in relation thereto as the trustee of the estate. The sale moneys of the personal estate were to fall due at *653 no distant period. It was the duty of the executor to do the best he could for the preservation of the interests confided to his care; and the plea of an inevitable prejudice cannot avail him, when we find that he had the means of becoming the purchaser. It ought to be presumed that he raised the money upon the credit of the estate, or that he advanced it himself upon that security; a presumption working no injustice; for if he gave the full value, he is reimbursed by a credit for the purchase money, and if he did not, it would be of dangerous consequence to permit him so to speculate upon the temporary necessities of the estate.
The credit therefore for hires, instead of interest, is correct in principle, and is not in conflict, as supposed, with the decision of this court in Godwin's adm'r v. Godwin's adm'x &c. 4 Leigh 410. The question there was as to the prospective allowance to be made to a widow out of the proceeds of slaves, sold by the executor under an innocent misapprehension that the situation of the estate required the sale for the payment of debts; and it was held that “she should receive one third of the purchase money, to be enjoyed by her during her life, and then returned to the estate; an allowance considered by the court more equitable than a commutation for a gross sum, the proper amount of which it would be difficult to ascertain by calculations, involving, as they must, an estimate of complicated hazards. But in the case before us, the question is in regard to the retributive compensation to be made for a dower right, from the enjoyment of which the widow was debarred during her life by the gross injustice of the executor. That the allowance is of estimated hires, from imperfect materials, is the fault of the executor himself, who has furnished no account or evidence in relation to the slaves, whether of hires or sales; in consequence of which the commissioner has been compelled to found his estimate chiefly upon the appraised *654 value of the slaves, most probably to the detriment of vvidow; and upon that basis, if he has committed an error, it is obviously not to the prejudice of the executor. His allowance of interest on estimated hires was ^or a br'e^ period and on a small balance, and not excepted to by the defendant.* Such minute errors in a commissioner’s report, however obvious, especially when unexcepted to, are not proper for the consideration of an appellate court; as they would require, from its repugnance to the reversal of the decree for a small matter, a reexamination, and it may be a restatement of the whole account, in order to ascertain whether there may not be errors to an equal or greater amouut on the other side.
Again, the appellant insists that the proper credit to the widow on account of the slave King, sold under the first execution against her, is the net proceeds of the sale, and nothing more ; that if his actual value at the time was 500 dollars, (which is denied, though 1 think proved) still the credit for that sum, minus the sheriff’s commission on'the price obtained, is wrong in principle; and that to allow it, is in effect to assess damages in a court of equity for proceeding at law under process of execution. This objection would, I think, be well founded if the result of the credit were an actual loss to the defendant, as would be the case if the property had been purchased by a stranger. But the defendant, having become the purchaser himself, is in fact subjected to no loss. He is merely denied an unrighteous gain, arising out of a sacrifice of the property occasioned by his own iniquitous and oppressive conduct. The question necessarily arose, upon the *655 facts stated in the bill, in the adjustment of the mat- . . ters ot account involved in the controversy ; and was not at all cognizable at law. The defendant had an undoubted legal right to enforce his judgment by process of execution ; but his exercise of it under the circumslances, not only to the prejudice of his adversary but to his own individual profit, could not be countenanced in a court of equity. The mode of relief was the only one that could be adopted, unless the defendant had been required to surrender the property, which it does not appear that he offered, nor that it was still in his power to do. The question was merely as to the measure of relief, that is to say, the proper amount of the credit; and that fell within the province and discretion of the court, in the exercise of its equitable jurisdiction over the whole subject, of which it was an inseparable incident.
There is much plausibility in the argument founded upon the master commissioner’s report, that at the time the defendant’s execution was levied upon King, the widow was still in arrear on account of her purchases at the executorial sale, to a greater amount than the value of the properly levied on. I think it not improbable that such would be the result of a statement based upon the materials furnished by the report, though none has been made by the commissioner with a view to that enquiry. But its concession does not relieve the defendant from the impropriety and injustice of proceeding to enforce the whole amount of his judgment, without giving the widow the smallest credit on account of her interest in the estate, every particle of which had been withheld from her for a period of eighteen years, unless upon the supposition of an agreement that the payment of her bond was to await a settlement of the estate. After the assurance given by his predecessor at the time of the widow’s purchases, and the great laches of both in regard to their adminis" *656 tration accounts, it was not for him to decide, without a settlement, and in contempt of the orders of court requiring a settlement, upon the question of the widow’s indebtedness. Nor can the materials furnished ^y the report be relied upon as shewing the balance due, on one side or the other, at any given period of time prior to the final adjustment; for they do not consist of accounts actually kept, but of substitutes therefor, resorted to for the purpose of preventing a failure 'of justice.
Thus it seems to me, that the decree of the circuit court was founded upon a correct adjustment of the matters of account involved in the controversy, and that mrs. HicJcerson, under the circumstances, was entitled to the interposition of the court to restrain the defendant from further proceeding upon his judgment at law. I can perceive no good reason why the actual plaintiff, as her grantee or donee, should be excluded from the benefit of her equity, so far as to prevent the slaves embraced in her conveyance to him from being subjected to the defendant’s process of execution against her. But I think it clear that she ought to have been made a party in the cause, inasmuch as she was directly interested in the settlement of the accounts, and the plaintiff Helm had no interest therein, except for the purpose of shewing that the defendant’s demand was extinguished. She died however in the progress of the suit, and Helm.' became her administrator, and as such the proper representative of her interests. If she had been a defendant in the cause, he could not have revived it against himself as her administrator. Her death and his administration were judicially known to the court, being disclosed by the record in the case of Shumate v. Hickerson, made part of the record in the present suit, and referred to in the decrees. The omission to state these facts on the order book, or by a supplemental bill, was a mere informality, for. which *657 it would be improper to reverse the decree, especially since the statute of the 27th of February 1828, Suppl. to Rev. Code, p. 125. which declares that no “ decree of a court of equity shall be reversed for informality in the proceedings, where the parties have proceeded to take their depositions, and it appears to the court that there has been a full and fair hearing upon the merits, and that substantial justice has been done between the parties.” And this gives the proper answer to the appellant’s objection that the balance found due to the widow is decreed to be paid to the plaintiff Helm. It will not be improper, however, for preventing any possible future misconstruction, to amend the decree in this particular, by directing the payment to be made to Helm in his character of administrator. A further amendment of the decree will also be proper, to supply its omission to require a refunding bond in regard to any future demands against the estate.
Stanard, J.
The appellee sought the aid of a court of equity by injunction to the sale of slaves on which an execution had been levied as the property of Elizabeth Hiclcerson, on the ground that the slaves were his property in virtue of a conveyance from the said Elizabeth. He claims that under that conveyance he became the owner of the slaves, either as a bona fide purchaser for valuable consideration, or as a donee. If he sustained his title as bona fide purchaser for valuable consideration, the only question that would arise is that respecting the jurisdiction of the court of equity to interpose its protection by way of injunction to the sale. The question of jurisdiction must, I think, have been resolved, on the authority of many decisions of this court, in favour of the appellee; and being so resolved, the relief that a court of equity should give would be the perpetuation of the injunction to the sale of the slaves which were under execution at the time the in *658 junction was awarded. Such relief would be granted, irrespective of any question concerning the fact or amount of indebtedness from Elizabeth Hicherson to the claimant under the execution, and consequently all en-qu‘ry *nt0 l^at matter would be superfluous, and foreign to the question of the relief to which the appellee was entitled. Viewing the case under this aspect, the indebtedness of Elizabeth Hicherson to the claimant under the execution would not restrict, nor would the absence of such indebtedness enlarge, the relief proper to be given the appellee. Under this aspect of the case the appellee would have no colour of right to resort to a court of equity to recover the slave that had been taken and sold under a previous execution. That taking and sale would be an invasion of his right of properly for which he would have a plain and adequate remedy at law, and for which he could no more obtain redress in equity, than he could for any other trespass on or dispossession of his personal property, for which the law had provided the remedy of an action of trespass, trover or detinue.
In the relief that has been given by the decree in this case, the court below has not regarded the appellee as a bona fide purchaser for valuable consideration, but has (and I think properly) regarded the conveyance to him from Elizabeth Hicherson as voluntary: and with this element in the case many questions arise as to the propriety of granting in equity any relief, and if any, the nature and extent of that relief.
Viewing the conveyance from Elizabeth Hicherson to the appellee as voluntary, the questions are, Ought the enforcement of the judgment at law against Elizabeth Hicherson to be injoined until the extent of her interests as distributee and dowress in the estate of her deceased husband, for which Marshall Hicherson was responsible, should be liquidated and adjusted, with a view to a setoff of the amount thereof against the *659 judgment ? And has the appellee a right to have those interests applied in reduction of the judgment, for the protection of the property he claims under the voluntary conveyance ?
I concur with my brother Baldwin in the opinion, that under the circumstances of this case, it was proper to make it an exception to the rule (which, as a general one, has my hearty approbation) that denies to a creditor or distributee the aid of a court of equity to intercept by injunction the collection of the assets by the executor or administrator, especially those arising from the sales of the executor or administrator, until the administration accounts are adjusted, with the view that the debt or distributive share may be set off; unless the title to such setoff be founded on the express agreement of the executor or administrator. There is evidence, direct and inferential, tending strongly to prove that such agreement was made in this case. This, coupled with the long continued delinquency of the executor and his representative to settle the administration account of the estate of Joseph Hickerson, and the delays to which the suit brought by the distributees of Joseph Hickerson to have that account settled has been subjected, mainly by the neglect and contumacy of the appellant the representative of the executor, justify the court in making this case an exception to the general rule. If Elizabeth Hickerson had not conveyed to the appellee, but still retained title to the slaves on which the execution was levied, she would be entitled to protection by injunction until the amount of her claim on Marshall Hickerson as the executor of her husband should be ascertained, and when ascertained, to set off the same against the judgment. The appellee, claiming under her conveyance, had as strong a claim to this equitable protection of the slaves conveyed to him by her, as she herself would have had if no such conveyance had been made; at least so far as *660 that protection operated on the interests of the appelgut frotn very nature 0f th¡8 c]a¡mj Elizabeth Hickerson was an indispensable party to a suit in equity asserting it. The necessity of making her a Party such a su*t evinced- by the consideration that it involved the adjustment and appropriation of her claim on the representative of her husband, and that unless she were a party thereto, the adjustment and appropriation that might be made of that claim by the decree would not bind her, and the representative of the executor would still be exposed to her suit, unprotected by such adjustment and appropriation. What, in my opinion, is the effect of the omission to make her or her representative a party to this suit, and what the proper mode of supplying that omission, will be stated in the sequel.
While I think the court below was right in maintaining the title of the appellee to its interposition in this case, I cannot approve of its decree. That, in my opinion, is in many respects erroneous.
The account by which the amount of the setoff to the judgment was to be liquidated could not have been properly settled but in a suit in which all the unsatisfied distributees of Joseph Hickerson should be parties. Such a suit had been brought many years before, and was pending at the institution of this. That and other considerations rendered it improper to make those distributees parties in this suit. In this predicament, the proper course was to retain the injunction in this suit until, by the adjustment of the account in the other, the amount of Elizabeth Hickerson's claim on the executor of her husband was finally liquidated ; and then to apply this liquidated claim as a setoff against the judgment. It was therefore premature to render in this case a final decree giving to the appellee the benefit of the entire claim of Elizabeth Hickerson on the executor, while the suit in which only it could be properly liqui *661 dated remained undecided. Furthermore, as has been before stated, Elizabeth Hiclcerson or her representative was a necessary party, and no decree should have been rendered until that omission was supplied.
In my opinion it was wrong, in adjusting the relief to which the appellee was entitled against the appellant, to subject the appellant to a charge for the estimated value of the slave that had been taken and sold under the appellant’s execution before the institution of this suit. Had the appellee been a bona fie purchaser for value from Elizabeth Hiclcerson, he would have had no title to relief in equity in respect to that slave after the levy and sale. I cannot understand how his title to relief, and the measure of such relief, can be extended by reducing his right in the slave to that of a claimant under a voluntary conveyance. Where there are contested mutual claims, and one claimant has his judgment at law, against an execution on which his antagonist might have obtained an injunction, but does not, and such execution issues, is levied, and the property is sold, the plaintiff in the execution has never been held chargeable in equity for the estimated value of the property sold, though it should be ascertained by that court, on the adjustment of the mutual claim, that he was indebted as much as or more than the amount of the execution, to the party against whom it issued. A fortiori such responsibility could not attach, when, on the adjustment of the claim, the judgment claimant is creditor to an amount above the mutual claim, equal to that levied under the'1 execution. In this case it was ascertained, that after allowing credit for the entire claim of Elizabeth Hiclcerson on the executor of her' husband, she was indebted, when the slave King was taken and sold, more than the amount for which he sold. The credit in respect to that slave should have been limited to the amount made on the execution by the sale of him.
*662 My opinion is that an undue allowance was made for the dower interest of m'rs. I.lickerson in the slaves of her husband, by charging in her favour the estimated hires of her dower interest in all the slaves of which her husband died possessed. In respect to the two sold under execution before the executor had other assets with which he could satisfy the judgment, it is perfectly clear that if they had been purchased by a stranger, the executor could not have been made responsible for hires. I cannot perceive that the purchase of them by the executor himself would leave him exposed to such responsibility. The sale was made without culpable default in him, and at the sheriff’s sale he, though executor, might purchase, as any other might; and a purchase by him, without fraud, as effectually withdrew those slaves from the dower claim on them specifically, as if the purchase had been by another. And yet the decree has subjected him to a charge for hires which he has not received, as though there had been no sale, and such hires had been received by him. In respect to the four other slaves, while I do not question that a case may exist of such gross misconduct of an executor, as to render him justly chargeable to the widow for hires of slaves that he ought to allot as her dower, but which he has wantonly sold, I think that, having regard to all the circumstances of this case, the dower interest in these four slaves should be adjusted (as I am satisfied it ought to be in respect to the other two) upon the principle adopted by this court in the case of Godwin's adm'r v. Godwin's adm'x &c. 4 Leigh 410. Furthermore, in a case in which the estimated hires would properly be chargeable to the executor, the amount of that charge, where it was impossible to trace the slaves and ascertain how long they lived, should be fixed by making a due allowance for the risk of life, and abating the amount thereof from the estimate of hires. The slaves *663 may have died shortly after the sale, and the widow claiming hires wmuld be entitled to them for so long only as the slaves lived. To make the dower right in . . a slave equivalent to a certain estate for the life of the widow, an insurance of his life during that of the widow must be made; and the amount of such insurance would be the proper measure of abatement from the estimate of hires during the life of the widow.

 Note by the reporter. It is believed to be unnecessary to except to what is not reported by the commissioner as his view of the case. A party may contend for a particular mode of stating the account, and have a special statement in that mode, but it is unnecessary to except to his statement, and indeed as irregular as it would be to except to his argument.